Entered on Docket
November 23, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
NOV 22 2011
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

RANDY GUERRERO BALAOING and ANGELINA QUENANGAN BALAOING,

Debtors.

Case No. 11-52030-ASW

Chapter 13

**MEMORANDUM DECISION FOLLOWING EVIDENTIARY HEARING REGARDING DEBTORS' MOTION TO AVOID LIEN OF BANK OF AMERICA, N.A.**

Before the Court is the motion ("Motion") by debtors Randy Guerrero Balaoing and Angelina Quenangan Balaoing ("Debtors") to determine the value and status of the second priority deed of trust held by creditor Bank of America, N.A. ("Bank of America") against Debtors' primary residence located at 13 Greentree Circle, Milpitas, California 95035 ("Property"). Debtors seek a determination that Bank of America's second deed of trust is not secured in any amount and thus may be treated as unsecured in Debtors' chapter 13 plan. Bank of America opposes the Motion. Debtors are represented by David A. Boone, Esq. and Leela Menon, Esq. of The Law Offices of David A. Boone. Bank of America is represented by Nicolas A. Daluiso, Esq. of Robinson Tait, P.S.

An evidentiary hearing on the Motion was held on September 6, 2011 and October 5, 2011, and the matter has been submitted for





UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

decision. At the September 6, 2011 hearing, Debtors called Michael Frangadakis ("Frangadakis"), an appraiser, as a witness. Bank of America called Edward Davis ("Davis"), an appraiser, as a witness. At the October 5, 2011 hearing, Debtors called Debtor Randy Guerrero Balaoing ("Mr. Balaoing") as a witness.

This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.

FACTS

Debtors commenced this case by filing a petition under Chapter 13 of the Bankruptcy Code on March 3, 2011. Debtors' main asset is the Property. Two deeds of trust have been recorded against the Property. The senior obligation and first deed of trust on the Property is held by US Bank Home Mortgage ("US Bank"). Bank of America is the beneficiary of a pre-petition loan made to Debtors pursuant to an Equity Maximizer Agreement and Disclosure Statement. Bank of America's loan is secured by the second priority trust deed ("Bank of America's Lien") against the Property.

On the bankruptcy petition date, the amount owing to US Bank was no more than $467,162.73. On April 29, 2011, Debtors filed the Motion. On June 2, 2011, Bank of America filed an objection to the Motion. The initial hearing on the Motion held on June 20, 2011 was continued to September 6, 2011 for an evidentiary hearing. The evidentiary hearing was continued to October 5, 2011 to allow Mr. Balaoing to testify as to Mr. Balaoing's valuation of the Property.

At the September 6, 2011 hearing, each party offered an expert witness to opine as to the value of the Property at the time of Debtors' bankruptcy petition. Both experts prepared written reports and those reports were entered into evidence. Debtors' expert witness Michael Frangadakis is a certified appraiser of real property specializing in properties located in Santa Cruz and Santa Clara counties. Bank of America's expert witness Edward Davis is a certified appraiser of real property. Both appraisers were qualified to testify as experts concerning the value of the Property.

Frangadakis holds a license from the State of California to conduct real estate appraisals. Frangadakis has owned and operated a full service real estate company which includes real estate appraisal services since 1980. Frangadakis has appraised real property in Santa Cruz and Santa Clara County for thirty years and appraises roughly twenty properties per month. Debtors asked Frangadakis to determine the market value of the Property as of February 16, 2011 -- just prior to the bankruptcy petition date of March 3, 2011.

Frangadakis testified that Frangadakis believed the fair market value of the Property was $440,000 as of February 16, 2011. Frangadakis based that conclusion upon a sales comparison analysis of six comparable properties. Frangadakis explained that a sales comparison approach to value is based upon an analysis of comparable properties within the same neighborhood in light of factors such as the real estate market of the particular neighborhood, the school systems, and the dwelling's characteristics including square footage, age, and condition.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 11-52030 Doc# 46 Filed: 11/22/11 Entered: 11/23/11 14:55:12 Page 3 of 18

At the hearing, Frangadakis explained the adjustments Frangadakis made to each of Frangadakis' comparable properties. Adjustments were made for characteristics of each comparable property which would make the comparable property more or less valuable than the Property, including variations in total square footage and living space, the total number of bedrooms/bathrooms/ fireplaces, superior or inferior condition of the roof, style of heating and air conditioning, additions to the comparable property such as a pool, and whether the comparable property or portions of the property -- such as the kitchen -- had been recently remodeled.

Frangadakis' report contained six comparable properties. The sales price of the Frangadakis comparables ranged from $430,000 to $467,000 and were sold between December 6, 2010 and January 13, 2011. The comparables were located from 0.38 miles to 2.28 miles away from the Property. Excluding Frangadakis' comparable number four, the comparables were all located between 2.02 miles and 2.28 miles away from the Property. Frangadakis explained that, excluding comparable number four, Frangadakis was unable to find any comparable sales within two miles of the Property that had sold within an acceptable time period before the date of Debtors' bankruptcy petition on March 3, 2011. Therefore, Frangadakis used comparables that were of similar age and within the same school district as the Property, but that were located a little further from the Property.

Bank of America's expert witness Davis is a California Certified Residential Real Estate Appraiser. Davis has been an appraiser for eight years and estimates that Davis has performed roughly 1,500 appraisals during that time. Davis testified that

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Davis believed the fair market value of the Property was $515,000 as of May 5, 2011 -- roughly two months after the date of Debtors' bankruptcy petition. Davis based that conclusion upon a sales comparison analysis of five comparable properties.

The sales prices of the Davis comparables ranged from $435,000 to $560,000 and were sold between January 14, 2010 and April 4, 2011. The comparables were located between .1 and .93 miles from the Property. Davis explained that Davis used comparables that were located closer to the Property than Frangadakis -- the tradeoff being that the comparables did not all sell as close in time to the date of Debtors' bankruptcy petition as Frangadakis' comparables. Therefore, three of Davis' comparables sold more than six months prior to March 3, 2011 and one of Davis' comparables sold more than one month after March 3, 2011. The remaining comparable, comparable number four, was the only comparable used by both Frangadakis and Davis and was located .38 miles away from the Property and sold roughly two months before March 3, 2011.

Davis testified that, excluding comparable number four, Davis chose to use comparables located closer to the Property, but that had sold either after March 3, 2011 or more than six months prior to March 3, 2011, because housing prices were stable at the time and because differences between neighborhoods were lost by using comparables located more than two miles away from the Property. Davis explained that while it is not inappropriate to use comparables more than two miles from the Property, an appraiser should use closer comparables if possible. In addition to choice of comparables, Frangadakis and Davis also differed in making adjustments to Frangadakis' and Davis' respective comparables.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

On October 5, 2011, Mr. Balaoing testified as to Mr. Balaoing's valuation of the Property. Mr. Balaoing was a licensed real estate agent from March 2007 to March 2011, but only used Mr. Balaoing's real estate license on three occasions when purchasing investment properties. Mr. Balaoing testified that the value of the Property is no more than $440,000 based on Mr. Balaoing's capacity as the owner of the property who is familiar with property values in the area in which the Property is located. Mr. Balaoing testified in Mr. Balaoing's declaration that Mr. Balaoing's opinion was also based on inspection and opinion of the value of comparable homes on or about the date of the filing of Debtors' bankruptcy petition.

## II.

## ANALYSIS

Debtors' Motion requests this Court to determine the value and status of Bank of America's Lien as wholly unsecured and void. Debtors contend that because the fair market value of the Property on the bankruptcy petition date was less than the debt secured by US Bank's first priority trust deed, Bank of America's Lien was wholly unsecured at the time of the bankruptcy. Bank of America opposes the Motion arguing the fair market value of the Property exceeded US Bank's first priority lien -- thus Bank of America's second priority trust deed was at least partially secured and entitled to the "antimodification" provision of Bankruptcy Code section 1322(b)(2).

Debtors seek to value Bank of America's Lien on the Property based on Bankruptcy Code section 506(a)(1), which states:

Case: 11-52030 Doc# 46 Filed: 11/22/11 Entered: 11/23/11 14:55:12 Page 6 of 18

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506 (a)(1). If the Court finds Bank of America's Lien to be wholly unsecured, as Debtors contend, then Bank of America is not the "holder of a secured claim" whose rights are subject to the "antimodification" protection of Bankruptcy Code section 1322(b)(2). Zimmer v. PSB Lending Coporation (In re Zimmer), 313 F.3d 1220 (9th Cir. 2002). The consequence of such a finding is that Debtors could provide for Bank of America's claim through Debtors' chapter 13 plan as a general unsecured claim, rather than a secured claim. Zimmer, 313 F.3d at 1227. Conversely, if the Court finds Bank of America's Lien to be secured by even $1.00, the "antimodification" protection of Bankruptcy Code section 1322(b)(2) applies and the claim must be paid as a secured claim and cannot be modified by Debtors' chapter 13 plan.

Bankruptcy Code section 506(a)(1) instructs that when a court is requested to determine the value of collateral, "such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property..." 11 U.S.C. § 506(a)(1). When the debtors intend to stay in their house, the proper valuation of the house under Bankruptcy Code section 506(a) is the fair market value. Taffi v. United States of America (In re Taffi), 96 F.3d, 1190, 1192 (9th Cir. 1996). The fair market value is not the "replacement" value because the house is not being replaced. Neither is it the "foreclosure" value because no foreclosure is intended in the chapter 13 plan. Taffi, 96 F.3d at

Case: 11-52030 Doc# 46 Filed: 11/22/11 Entered: 11/23/11 14:55:12 Page 7 of 18

1192. The fair market value is "the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time." Taffi, 96 F.3d at 1192. Debtors intend to stay in the Property, cure the loan owed to US Bank, and treat Bank of America as a general unsecured creditor.

For purposes of granting or denying the Motion, this Court does not need to determine the exact value of the Property. In re Serda, 395 B.R. 450 (Bankr. E.D. Cal. 2008). The Court only needs to determine whether or not the value of the Property at the time of Debtors' bankruptcy petition was greater than, equal to, or less than the amount of the senior secured debt owed to US Bank. Serda, 395 B.R. at 453. Here, the amount owing to the first deed of trust holder was no more than $467,162.73 on the petition date.

Debtors bear the initial burden of proof of overcoming any presumption established by the stated value in the secured creditor's proof of claim. Serda, 395 B.R. at 454. The secured creditor has the ultimate burden of persuasion to demonstrate, by a preponderance of the evidence, the value of the collateral which secures its claim. In re Southmark Storage Associates Ltd. Partnership, 130 B.R. 9, 10 (Bankr. D. Conn. 1991).

Both parties' expert witnesses used the sales comparable method to estimate the fair market value of the Property at the time of Debtors' bankruptcy petition. The first hearing on the matter lasted roughly four hours wherein both experts testified. The hearing at which Mr. Balaoing testified lasted approximately twenty-five minutes. The Court considered all the evidence admitted at trial as well as the parties' written briefs and oral arguments.



Case: 11-52030 Doc# 46 Filed: 11/22/11 Entered: 11/23/11 14:55:12 Page 8 of 18

Debtors' expert, Frangadakis, analyzed six comparable properties that were located between .38 and 2.28 miles from the Property. The properties Frangadakis included in Frangadakis' report were all sold between December 9, 2010 and January 13, 2011. Each of Frangadakis' comparables had closed escrow by the time of Debtors' bankruptcy petition. Based on these comparables, Frangadakis concluded that the Property had a fair market value of $440,000 on the petition date. Debtors have presented sufficient evidence to overcome the presumption of value set forth in Bank of America's claim.

Bank of America's expert, Davis, analyzed five comparable properties that were located between .1 and .93 miles from the Property. The properties Davis included in Davis' report were all sold between January 14, 2010 and April 11, 2011. The properties included in Davis' report all closed escrow between June 10, 2010 and April 28, 2011.

After weighing the evidence and testimony before the Court, the Court sees two underlying principal issues as responsible for the difference between Frangadakis' and Davis' opinions: (1) whether a more accurate appraisal is obtained by using comparables located closer to the Property, but that were sold outside the six month period prior to the date of Debtors' bankruptcy petition, or by using comparables located more than two miles from the Property, but that were in the same school district as the Property and that were sold within the four months prior to the date of Debtors' bankruptcy petition; and (2) whether Frangadakis or Davis made correct adjustments to Frangadakis' and Davis' respective comparable properties. Each issue will be addressed in turn.

**A. Proximity versus Date of Sale**

One of the key issues dividing Frangadakis' and Davis' appraisal figures is the use of different comparable properties. Other than comparable number four, Frangadakis and Davis share no common comparables. As explained by both Frangadakis and Davis, appraisers using the sales comparison approach attempt to find properties physically similar to the subject property, that were sold as close to the effective date of the appraisal without being sold after the effective date of appraisal, and that are located as close to the subject property as possible. Ideally, the perfect comparable would be the exact same model of home with the same amenities, sold the same day as the effective date, and located just next door. The problem faced by Frangadakis and Davis was that, other than comparable 4, there were no comparable properties sold within the six month period prior to the effective date that were also located within two miles of the Property. Therefore, Frangadakis and Davis had to choose whether to use properties that were not ideal because those properties were sold more than seven months prior to the effective date, or to use properties that were not ideal because those properties were located more than two miles from the Property.

At trial, Frangadakis testified that Frangadakis chose to use the comparables that were located more than two miles from the Property, but that were sold within the time period four months prior to Debtors' bankruptcy petition date. Frangadakis explained that Frangadakis concluded that the Milpitas housing market was declining in value prior to the effective date, and that Davis' comparables could therefore not appropriately be used to establish an accurate appraisal value. Frangadakis also testified that lender standards

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 11-52030 Doc# 46 Filed: 11/22/11 Entered: 11/23/11 14:55:12 Page 10 of 18

require comparable properties to have sold within the six month period prior to the effective date.

Davis testified that Davis chose to use comparables that were located closer to the Property, but that had sold seven to fourteen months prior to the effective date of March 3, 2011, because Davis believed that the housing market in that area was stable. The Court does not agree. Bank of America's exhibit number five shows that single family residential homes in Milpitas, California sold in April 2010 for an average sales price of $566,420 and a median sales price of $550,000. Bank of America's exhibit number six shows that single family residential homes in Milpitas, California sold in March 2011 for an average sales price of $507,479 and a median sales price of $436,000. These figures show that for the year before the date of Debtors' bankruptcy petition, the average sales price for a single family residential home in Milpitas, California fell roughly 10.4% while the median sales price fell roughly 20.73%. These dramatic drops in average and median sales prices for single family residential homes in Milpitas, California indicate a declining market, rather than a stable market.

Debtors introduced evidence showing that use of comparables sold between seven and fourteen months prior to the date of Debtors' bankruptcy petition without making an adjustment for a declining market would produce an inaccurate appraisal value. However, Bank of America did not produce evidence showing that Frangadakis' choice of comparables might lead to an inaccurate appraisal. During cross-examination of Frangadakis, Bank of America's counsel asked Frangadakis whether using comparable properties located more than two miles from the Property was inappropriate. Frangadakis responded

that each of the comparables Frangadakis used were homes of similar age to the Property and were in the same school district as the Property. Frangadakis testified that Frangadakis considered the school district to constitute the applicable neighborhood. Though Bank of America's counsel suggested that there might conceivably be differences within the school district that Frangadakis used to define the neighborhood that could affect home values, Bank of America did not introduce any evidence to support this theory.

**B. Frangadakis' and Davis' Adjustments**

The Court finds that Davis' adjustments for Davis' comparable properties were not well supported. First, Frangadakis testified credibly that Frangadakis believed that Davis did not make proper adjustments for Davis' properties. Second, Davis should have made adjustments to properties that were recently remodeled or substantially improved, but did not.

During Frangadakis' direct examination, Frangadakis testified that Frangadakis did not agree with Davis' adjustments. For example, Frangadakis testified that, based on the information available in the MLS listings, Davis' comparable five should have been adjusted to reflect the comparable property's superior kitchen and recent remodel. Frangadakis also testified that Davis' comparable four, which was also Frangadakis' comparable four, should have been adjusted to reflect the comparable property's superior location, smaller lot size, remodeled condition, smaller square footage (Davis did make this adjustment, but Frangadakis made a smaller adjustment), lack of fireplace, and remodeled kitchen. During Davis' direct examination, Davis attempted to explain Davis' choice not to make certain adjustments. Regarding comparable four, Davis explained that

Davis did not adjust for location because Davis felt traffic noise was not significant, that Davis did not adjust for lot size because most other lots in comparable number four's area were within that range, that Davis did not adjust for the remodel because Davis thought any adjustment would be "arbitrary," that Davis' adjustment for square footage was larger because Davis used $80 per square foot as opposed to Frangadakis' $60 per square foot, and that Davis did not adjust for the lack of a fireplace because Davis did not feel that absence of a fireplace was significant.

Without evidence before the Court detailing whether standard appraisal practice accounts for differences in the number of fireplaces, the Court cannot determine whether Frangadakis is right to adjust for comparable four lacking a fireplace. However, both appraisers testified that it is appropriate to make adjustments for lot size and condition of the comparable properties.[1] The Court therefore finds that Frangadakis was correct in making these adjustments to Frangadakis' comparable properties, and that by including these adjustments, Frangadakis' appraisal report produced a more credible appraisal value.

The Court is also especially concerned that Davis chose not to adjust for any remodel of the comparable properties or of the properties' kitchens. Regarding comparable four, Davis admitted that comparable four had a remodeled kitchen that was much nicer than the Property's kitchen. Davis said Davis did not make any adjustment for

---

[1] The appraisal form used by both Frangadakis and Davis contains spaces to make adjustments for lot size and condition of the comparable property. That both appraisers' forms contain spaces to make adjustments for lot size and condition suggests that standard appraisal practice is to make adjustments for these categories.



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

the remodeled kitchen because any adjustment would be "arbitrary." The Court recognizes that any adjustment made to the comparable properties involves an opinion. However, the purpose of making the adjustment is to account for differences between the comparable property and the Property, which in turn assists the Court in determining the value of the Property. A reasonable home buyer is likely to pay a premium for a newly remodeled and superior kitchen. Therefore, the Court agrees with Frangadakis that some adjustment should have been made.

The Court finds that there was substantial evidence that Davis' comparable properties number two, three, four, and five were remodeled just prior to the sale of each of those properties, which accounted for the properties' higher sales prices. Davis' comparable number two, which had a sale date of July 28, 2010 and sold for $560,000, was previously sold on April 5, 2010 for $432,100 -- a 29% increase in sale price in three months. Davis' comparable number three, which had a sale date of May 11, 2010 and sold for $550,000, was previously sold on February 8, 2010 for $405,000 -- a 35% increase in price in three months. Davis' comparable number four, which had a sale date of January 10, 2011 and sold for $465,000, and for which Frangadakis made a $25,000 adjustment for a general remodel and $20,000 adjustment for a remodeled kitchen, was previously sold on September 9, 2010 for $366,750 -- a 26% increase in four months. Davis' comparable five, which had a sale date of April 11, 2011 and sold for $435,000, was previously sold on November 16, 2010 for $355,000 -- a 22% increase in six months.

Davis testified that the explanation for the price difference was that the prior sales were bank sales, and that presumably the

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

bank was concerned with selling the property as quickly as possible rather than receiving the highest price possible. The Court recognizes that some bank-owned properties sell for less than market value. However, other than the testimony of Davis, no evidence was submitted showing that a bank would have motivations that supersede receiving the highest possible price for the property, or that the banks in question received especially low prices for their sales.

Debtors did, however, submit evidence showing that the substantial increase in price for each property was due to an extensive remodel of the properties. During Davis' cross-examination, Davis admitted that comparable four was a remodeled property, but believed no adjustment could be made because Davis could not determine the value of the remodel. Debtors also submitted the MLS listing for Davis' comparable numbers two and five. The MLS listing for comparable number two, which Davis used in determining what adjustments to make, described the property as: "Beautiful two stories detached single family with many upgrades. Hardwoods floor thru out first floor. New granite counter top, tile in kitchen and bathroom, new appliance, new carpet, new interior paint, new roof." The MLS listing for comparable number five described the property as: "Professionally remodeled throughout ... new interior ... new bathroom cabinets, new recessed lighting, new granite counter top and kitchen island, new stainless steel appliances, newly refurbished hardwood floor, new tile floor in kitchen and bathrooms..."

Given the drastic increase in sales prices in a relatively short time frame, and considering the description of the upgrades and remodel to the properties, the Court finds that these properties were substantially remodeled and that the remodels account for the large

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 11-52030 Doc# 46 Filed: 11/22/11 Entered: 11/23/11 14:55:12 Page 15 of 18

sales price differentials. All other differences accounted for, the Property cannot be valued at the same price as these remodeled properties because a reasonable buyer will pay more for a remodeled property with new amenities than the buyer will pay for a non-remodeled property without new amenities. Appropriate adjustments should therefore be made to the remodeled comparable properties.

The Court finds that Davis should have made adjustments for the remodeled kitchens and other important rooms and that Davis' failure to do so renders Davis' report less reliable and credible than Frangadakis' report and conclusions.

**C. Mr. Balaoing's Testimony**

On October 5, 2011, Mr. Balaoing testified as to Mr. Balaoing's valuation of the Property. Mr. Balaoing valued the Property at $440,000 based on Mr. Balaoing's capacity as the owner of the Property who is familiar with properties in the area, Mr. Balaoing's training as a real estate agent, and based on Mr. Balaoing's inspection and opinion of the value of comparable homes.

Two issues were brought up during Mr. Balaoing's testimony on October 5, 2011. Debtors asked to introduce evidence at the hearing that was not previously shared with Bank of America. Bank of America objected to the use of Debtors' evidence on hearsay grounds. The Court has decided not to rely on Debtors' evidence. For the reasons previously stated, the Court finds that Frangadakis' appraisal is more accurate than Davis' appraisal. The Court does not rely on Mr. Balaoing's testimony, so Mr. Balaoing's testimony does not affect the outcome of this matter.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

III.

CONCLUSION

Based on the evidence admitted at hearing and the arguments of counsel, the Court finds Frangadakis' appraisal to be generally accurate and reliable. Davis' appraisal was not as reliable or accurate for the reasons explained above. While Debtors submitted evidence showing that Davis' choice of comparable properties might yield inaccurate adjusted values, Bank of America submitted no evidence to suggest that Frangadakis' choice of comparable properties would produce inaccurate adjusted values. Davis did not make proper adjustments to Davis' comparable properties, especially adjustments to properties that were recently remodeled and that included substantial new amenities. The Court finds that Frangadakis' appraisal of the Property, which values the Property at $440,000 -- less than US Bank's first priority deed of trust in the amount of $467,162.73, is more accurate and significantly more reliable.

For the foregoing reasons, Debtors' Motion to determine the value and status of Bank of America's Lien as wholly unsecured and void is granted. The Court finds that the value of the Property was less than the amount secured by the first deed of trust. Accordingly, Bank of America's secured claim is wholly unsecured and is not entitled to the protection of Bankruptcy Code section 1322(b)(2). Counsel for Debtors shall prepare a proposed form of order, serve it on counsel for Bank of America, and then submit it to the Court.

Dated: 11/22/11

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE



Case: 11-52030 Doc# 46 Filed: 11/22/11 Entered: 11/23/11 14:55:12 Page 17 of 18

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Court Service List

Randy Guerrero Balaoing
13 Greentree Circle
Milpitas, CA 95035-0000

Angelina Quenangan Balaoing
13 Greentree Circle
Milpitas, CA 95035-0000

Bank of America, N.A.
P.O. Box 30750
Los Angeles, CA 90030-0750

Bank of America, N.A.
P.O. Box 26012, NC4-105-02-99
Greensboro, NC 27420-6012

David A. Boone
Law Offices of David A. Boone
1611 The Alameda
San Jose, CA 95126

Nicolas A. Daluiso
Robinson Tait, P.S.
710 Second Avenue, Suite 710
Seattle, Washington 98104

Devin Derham-Burk
P.O. Box 50013
San Jose, CA 95150-0013

Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004



Case: 11-52030 Doc# 46 Filed: 11/22/11 Entered: 11/23/11 14:55:12 Page 18 of 18